MUTUAL LIFE INS. CO. OF NEW YORK v. LEUBRIE.

(Circuit Court of Appeals, Second Circuit. January 8, 1896.)

No. 46.

1. LIFE INSURANCE—SUICIDE—INSANITY.

Suicide of the insured is not a breach of a warranty in his application that he will not "die by his own hand," if, at the time of taking his life, his reasoning faculties are so far impaired that he is not able to understand the moral character, general nature, consequences, and effect of his act, or when he is impelled thereto by an insane impulse which he has not the power to resist. Insurance Co. v. Terry, 15 Wall. 580, followed. [1]

2. SAME—WARRANTIES AND CONDITIONS.

A warranty in the application that the insured will not die by his own hand has the same effect as a condition in the policy that the same shall be void if the insured shall die by his own hand.

3. SAME.

Where the policy is issued upon an application warranting that the insured will not die by his own hand, it is not necessary, in New York, for the plaintiff to allege the fact that the insured died by suicide, and to aver that he was insane at the time. It is not necessary to state the facts constituting performance of a condition precedent, but it is enough to aver generally that it was duly performed. Code Civ. Proc. N. Y. § 533.

4. SAME—EVIDENCE OF INSANITY—NONEXPERT TESTIMONY.

Upon the question as to the sanity of an insured person who has committed suicide, the testimony of nonprofessional witnesses, who were acquainted with him, in respect to his actions and apparent mental condition just prior to death, and their impressions as to his sanity, is admissible evidence. Insurance Co. v. Lathrop, 4 Sup. Ct. 533, 111 U. S. 612, and Insurance Co. v. Rodel, 95 U. S. 232, followed.

5. TRIAL—INSTRUCTIONS.

It is not error for the court to refuse a requested instruction to the same effect as a previous instruction already given in the general charge.

In Error to the Circuit Court of the United States for the Southern District of New York.

---

[1] As to the effect of the self-destruction of the insured while insane, under policies containing conditions against suicide, see note to Insurance Co. v. Florida, 16 C. C. A. 618, 69 Fed. 932, where all the American authorities are collated.

This was an action by Gussie Leubrie against the Mutual Life Insurance Company of New York upon a policy of life insurance. In the circuit court a verdict was rendered for the plaintiff, and judgment entered thereon. The defendant brings error.

Robert Sewell, for plaintiff in error.

Leopold Wallach, for defendant in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This is a writ of error brought by the defendant in the court below to review a judgment for the plaintiff entered upon the verdict of a jury.

The action was on a policy of life insurance issued by the defendant February 3, 1890, to Jay C. Leubrie, and payable to him on the 3d day of February, 1905, if then living, or, if he should die before that time, to a sister,—the plaintiff. The policy was based upon, and recites that it was issued in consideration of, an application in writing signed by Jay C. Leubrie, which, among other things, contained a warranty that he would not die by his own hand during the period of two years following the issue of the policy. He died within the two years by suicide. The principal defense to the action was the breach of this warranty. Upon the trial, evidence was introduced on behalf of the plaintiff tending to show that the deceased was insane at the time he committed suicide. The trial judge instructed the jury, among other things, that it was incumbent upon the plaintiff to establish by a fair preponderance of proof that, at the time the assured committed suicide, his reasoning faculties were so far impaired that he was not able to understand the moral character, the general nature, consequences, and effect, of the act, or that he was impelled thereto by an insane impulse which he had not the power to resist, and, if this was established, that his death was not by his own hand within the meaning of the warranty. Exceptions were taken by the defendant which present the question whether this instruction was correct, and also whether there was sufficient evidence to authorize a finding by the jury that the deceased was insane when he committed suicide. Since the case of Insurance Co. v. Terry, 15 Wall. 580, it has been perfectly well settled in the courts of the United States that death by the suicide of the assured is not "death by his own hand," within the meaning of a condition whereby the policy is to be void in that event, if, at the time of taking his own life, his reasoning faculties were so far impaired that he was not able to understand the moral character, the general nature, consequences, and effect, of the act, or when he was impelled thereto by an insane impulse, which he had not the power to resist. The doctrine of that case has been repeatedly reaffirmed by the supreme court. Bigelow v. Insurance Co., 93 U. S. 284; Insurance Co. v. Rodel, 95 U. S. 232; Insurance Co. v. Broughton, 109 U. S. 121, 3 Sup. Ct. 99; Insurance Co. v. Crandal, 120 U. S. 527, 7 Sup. Ct. 685. Inasmuch as the instruction of the trial judge was an exact statement of this proposition, its correctness

cannot be impeached, unless there is a legal distinction between the effect of such a condition when recited in the policy, and when made the subject of a warranty in an application upon which the policy is founded. There is no such distinction. In either case there is a stipulation, upon the literal fulfillment of which the validity of the contract depends; and in either the policy is to be void in the event of a breach,—a result which, by the condition, is expressly, and, by the warranty, is impliedly, assented to. Treating it as a condition precedent, performance of which must be averred in the complaint, and affirmatively established in proof, by the party who sues upon the policy, the averment is proved if the evidence shows that the assured was insane when he committed suicide.

It was unnecessary for the plaintiff to allege in her complaint that the assured died by suicide, but was insane when he committed the act. It is not necessary to state the facts constituting performance of a condition precedent, and a general averment that it was duly performed is all that is requisite. Code Civ. Proc. N. Y. § 533. The complaint of the plaintiff contained this averment. Consequently there was no error in the ruling of the trial judge upon the question of pleading.

Although there was no controversy as to the sufficiency of the proofs of death, and they were received in evidence without any objection on the part of the defendant, the plaintiff was allowed to show, against the objection of the defendant, that when they were presented she did not know whether the assured was sane or insane. Error is assigned of this ruling. It suffices to dispose of this assignment that no ground of objection to the evidence was assigned.

The testimony of nonprofessional witnesses—persons who were acquainted with the assured—in respect to his actions and apparent mental condition just prior to his death, and their impressions as to his sanity, was allowed, against objection on the part of the defendant, and error is assigned of this ruling. The competency of such evidence was affirmed in Insurance Co. v. Rodel, in this language:

"Although such testimony from ordinary witnesses may not have great weight with experts, yet it was competent testimony, and expressed in an inartificial way the impressions which are usually made by insane persons upon people of ordinary understanding."

In Insurance Co. v. Lathrop, 111 U. S. 612, 4 Sup. Ct. 533, the question of the competency of such evidence was fully considered, and its reception approved.

The evidence tended to show that until within a few weeks of his death the assured was a bright, shrewd, joyful man. He was a merchant, about 33 years of age, unmarried, and doing a prosperous business. Suddenly, without any apparent cause, he became melancholy and despondent; thought he was sick and was going to die; complained of pains in his legs and in his toes, and other ailments; almost every night would get up from his bed and walk the room;

became inattentive to his business. The physician who attended him after these symptoms intervened could not discover that he was sick, and testified that there was no organic trouble, that he was physically in usual good health, and that "the greatest trouble I had with him was to convince him that he was not sick"; that "he was always all right when I left him, but I always found him in a melancholy mood." Several days before his death he attempted to commit suicide by taking laudanum. The night of his death, after the family with whom he lived had retired, he left his room in his night clothes, proceeded to the back yard of the premises, and there gashed himself on his wrists and neck in several places with a razor, and, although bleeding profusely, went back to his room, and thence, a considerable distance, to the Arkansas river, where he drowned himself.

Notwithstanding there was evidence to show that he was rational in his conversation, and perhaps preponderating evidence tending to overthrow the theory of his insanity, we cannot doubt that the case presented a fair question for the decision of the jury, and that the trial judge was not only justified in submitting it to them, but that it would have been error if he had refused to do so.

Error is assigned of the refusal of the judge to instruct the jury, as requested on behalf of the defendant, that the opinion of a physician, a witness for the plaintiff, who had testified that the deceased was insane, but that the opinion was wholly founded upon the fact of suicide, should be disregarded by the jury. The court had previously instructed the jury that suicide was not, of itself, evidence of insanity. To have granted the instruction would have been, in effect, but to repeat the instruction which had already been given. Under the circumstances, the disposition of the request was matter which rested wholly in the discretion of the court.

We find no error in the rulings at the trial, and the judgment is accordingly affirmed.